IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Sol Rose, III,                       :

    Plaintiff,             :

 v.                                  :        Case No. 2:12-cv-977

Sgt. Maynard Reed, et al.,    :        JUDGE JAMES L. GRAHAM
                                                           Magistrate Judge Kemp
    Defendants.            :

## REPORT AND RECOMMENDATION

Plaintiff, Sol Rose, III, an inmate at the Belmont Correctional Institution, filed this action under 42 U.S.C. §1983 alleging that while he was an inmate in the Jefferson County Jail, certain employees of the jail assaulted him or were responsible for the assault as a result of a failure to properly recruit, train, and discipline officers. Mr. Rose, III named Jefferson County Sheriff Fred Abdalla, Charles Spencer, Mahmoud Hassan, and Maynard Reed as Defendants. Following the completion of discovery, Defendants filed a motion for summary judgment. That motion has been fully briefed. Mr. Rose, III has also filed a motion requesting video argument (Doc. 65) and a motion for denial of oral argument (Doc. 66). For the reasons set forth below, the Court recommends that the Defendants' summary judgment motion (Doc. 52) be granted in part and denied in part and the motions regarding argument (Docs. 65 & 66) be denied.

## I. BACKGROUND

The following account is taken from the deposition of Mr. Rose, III. Many of these facts are contested by Defendants. On February 14, 2012, Mr. Rose, III was arrested and held at the Jefferson County Jail. (Doc. 51-1 at 11:1-6; 120:21-122:14). On February 20, 2012, Sergeant Reed came into the section of the jail where Mr. Rose, III was housed, the C pod, to pass out medication. (Doc. 51-1 at 42:9-43:19). At that time, certain

doors were unlocked and another inmate opened a security door and placed some items outside the door without being rebuked even though it was in violation of the rules. When Mr. Rose, III saw that the inmate was not rebuked, he thought that the guards did not mind, so he placed some items outside the door also. (Doc. 51-1 at 44:1-49:9). After that, Sergeant Reed asked him what he was doing and then started yelling at everyone about not going through the door. (Doc. 51-1 at 54:1-58:2). When Mr. Rose, III thought that Sergeant Reed was finished yelling about the incident, he walked away. (58:11-60:12).

Then, after Mr. Rose, III walked away, Sergeant Reed began talking to him, which Mr. Rose, III described as follows:

> A. . . . that's when [Sergeant Reed] directed something of the nature – and you, I know you're going to call yourself being tough, and I was like, excuse me.
> Q. He said what?
> A. I know you're going to call yourself being tough, like you're tough, and I'm like, excuse me. Then that's when he said, who did you beat. You ain't never beat nobody before – whoop or beat – and I'm like, where did that come from. He was like, look, I know you ain't calling yourself being scared of Sol Rose, Sol Rose ain't nothing, he ain't nothing but a punk. That's when I turned around – well, I was standing there going, man, what's wrong, man, I ain't did nothing to you. That's when he was like, whatever, whatever, whatever, I ought to knock you out. You ain't shit . . .

(Doc. 51-1 at 60:10-24). After that, Officer Hassan said something to Sergeant Reed that Mr. Rose, III could not hear, and then said something like "let it go," and Sergeant Reed said "I wish he would, I'll knock his punk ass out. By the time he swings one time, I'll hit him 10, 20 times." (Doc. 51-1 at 61:2-8). After more statements of a similar tone, Sergeant Reed approached Mr. Rose, III, grabbed him, and took him into the

2

hallway and then into the doorway to pod D. (Doc. 51-1 at 61:9-66:23; 75:5-77:4). Mr. Rose, III was apologizing to Sergeant Reed during that time and Sergeant Reed was telling him that he was underestimating the power of his badge, presumably referring to his position as sergeant. (Doc. 51-1 at 65:8-66:12). Once they were through the security door to the D pod or dorm, Sergeant Reed punched Mr. Rose, III in the back of the head, then punched his temple, and as Mr. Rose, III fell down Sergeant Reed kicked him all over his body and put him in a cell in pod D. (Doc. 51-1 at 66:16-68:14). Pod D was a segregation unit. (Doc. 51-1 at 89:7-92:5).

While the complaint alleged that Defendants Hassan and Spencer also struck Mr. Rose, III and kicked him, Mr. Rose, III testified that he did not know if they did or not. (Doc. 51-1 at 41:1-20). The complaint also alleged that Defendant Sheriff Abdalla failed to train, discipline, and recruit officers.

As a result of the incident, the side of Mr. Rose, III's head was swollen for about four days, and he got headaches that continued during the time he was in the county jail. (Doc. 51-1 at 113:17-116:21). He testified that apart from the swelling on the side of his face and the back of his head, he did not have other cuts or bruises. (Doc. 51-1 at 115:13-20). He also testified that his arm was injured when he was trying to defend himself from Sergeant Reed's kicks. (Doc. 51-1 at 117:24-119:5).

## II. LEGAL STANDARD

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving

3

party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962).

The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion. It is with these standards in mind that the instant motion must be decided.

The facts which the Court must take as true for purposes of a summary ruling are those which have been properly supported. As Fed. R. Civ. P. 56(c) states, proper support for facts at this stage of the case can come from "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials...." One common feature of all these types of information is that they be properly authenticated or sworn to. As the Court of Appeals has said, "it would [be] improper for the

4

district court to consider documents that were not admissible in evidence" when ruling on a summary judgment motion. Alexander v. CareSource, 576 F.3d 551, 561 (6th Cir. 2009).

This Court recognizes that Mr. Rose, III is proceeding *pro se*. Although not excused from complying with the rules of civil procedure, "[a] *pro se* litigant's pleadings and evidence presented must be, and in this instance are, construed liberally." Anderson v. Frye, 2007 WL 912290, *6 (S.D. Ohio Mar. 22, 2007).

### III. ANALYSIS

#### A. Exhaustion of Administrative Remedies

Defendants first argue that judgment should be entered in their favor because Mr. Rose, III has not exhausted his administrative remedies. The Prison Litigation Reform Act of 1996 (PLRA) requires a prisoner to exhaust administrative remedies prior to filing an action in federal court. 42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516, 532 (2002) (holding that "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). "To exhaust a claim, a prisoner must proceed through all steps of a prison or jail's grievance process, because an inmate 'cannot abandon the process before completion and claim that he has exhausted his remedies.'" Umani v. Caruso, 2008 WL 2216283 at *5 (E. D. Mich. May 27, 2008) (quoting Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999)). Although exhaustion is not a jurisdictional prerequisite, it is a mandatory requirement. Wyatt v. Leonard, 193 F.3d 876, 879 (6th Cir. 1999). Failure to properly exhaust bars suit in federal court. Woodford v. Ngo, 548 U.S. 81 (2006).

Failure to exhaust administrative remedies is an affirmative defense. See Jones v. Bock, 549 U.S. 199 (2007). As

5

a result, "[a] PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies." Surles v. Andison, 678 F.3d 452, 456 (6th Cir. 2012). Here, Defendants have not presented evidence of what the Jefferson County Jail grievance process requires. The testimony of Mr. Rose, III that he was aware that he could communicate with jail staff through "forms and stuff" (Doc. 51-1 at 112:18) is not sufficient to demonstrate the requirements of the grievance process. Because Defendants have not demonstrated what steps were required of Mr. Rose, III, they cannot demonstrate that he failed to follow those steps. At least for purposes of the present motion, Defendants have not met their burden of showing Mr. Rose, III's alleged failure to exhaust, and they are not entitled to judgment on this ground.

### B. Merits of §1983 Claim

Turning to the merits of Mr. Rose, III's claims, "'[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" Gray v. City of Detroit, 399 F.3d 612, 615 (6th Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)). A plaintiff seeking relief under §1983 may bring a claim against a public official in the official's individual or official capacity. Individual-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer v. Melo, 502 U.S. 21, 25 (1991). In contrast, an official-capacity claim is "another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978).

If there is no indication that defendants are being sued in their individual capacities, the Court assumes they are being

sued in their official capacities. Moore v. City of Harriman, 272 F.3d 769, 772 (6th Cir. 2001) (citing Whittington v. Milby, 928 F.2d 188 (6th Cir. 1991)). However, even if there is no indication in the complaint that defendants are being sued in their individual capacities, courts in this circuit "have applied a 'course of proceedings' test to determine whether §1983 defendants have received notice of the plaintiff's intent to hold them personally liable, albeit without clearly labeling the test as such." Moore, 272 F.3d at 772 (noting that courts have looked to filings such as a response to a motion for summary judgment to determine whether proper notice had been given) (citations omitted). Accordingly, failure to state explicitly that a defendant is being sued in his or her individual capacity is not fatal to individual-capacity claims "if the course of proceedings otherwise indicates that the defendant received sufficient notice." Id. at 772 (citations omitted).

Mr. Rose, III did not specify in his complaint whether he was suing Defendants in their official or individual capacities. However, his complaint seeks compensatory and punitive damages, and Defendants have raised the defense of qualified immunity in their answer, both of which indicate that Defendants had actual knowledge of the potential for individual liability. Rodgers v. Banks, 344 F.3d 587, 594 (6th Cir. 2003) (citations omitted). The course of the proceedings indicates that Defendants here received sufficient notice that Mr. Rose, III intended to pursue individual capacity claims, so the Court will consider claims against Defendants in both their official and individual capacities.

### 1. Official Capacity

When a plaintiff sues local government officials and employees in their official capacity, the suit is treated as one against the municipality. See, e.g., Kentucky v. Graham, 473

U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" (citation omitted)).  In order to satisfy the requirements for suing a municipal employee or entity, Mr. Rose, III must "1) identify a municipal policy or custom; 2) connect that policy or custom to the municipality; and 3) show that execution of that policy or custom caused the particular injury." Janis v. Marcum, 77 Fed. App'x 308, 310 (6th Cir. 2003)(citing Garner v. Memphis Police Dep't., 8 F.3d 358, 364 (6th Cir. 1993) and Gregory v. Shelby County, Tenn., 220 F.3d 433, 442 (6th Cir. 2000)).  "There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005).

Mr. Rose, III does not argue that a municipality or custom caused his injury.  Rather, he argues that Defendants violated existing policy when they caused his injury.  (Doc. 57; Doc. 58 at 2; Doc. 60 at 5-7).  His testimony is consistent with this argument.  (Doc. 51-1 at 165:9-166:2).  He did not point to actions taken by officials with final decision-making authority. To the contrary, he testified that he believed Sheriff Abdalla did not know about the incident and would have done something if he had known (Doc. 51-1 at 160:18-161:14), and that he did not know whether any high ranking officials knew about the incident (Doc. 51-1 at 164:7-165:8).  He did not provide any evidence of inadequate training or supervision other than the incident itself.  (Doc. 51-1 at 162:4-163:20).  Regarding a custom of

8

tolerance or acquiescence of federal rights violations, Mr. Rose, III points to the disciplinary records of Defendants, but none of the disciplinary records involved assault or any type of physical harm to inmates. (Doc. 57). Mr. Rose, III did testify that Defendant Reed had a reputation for being violent, and testified to having seen Defendant Reed "shove someone against the wall" and having heard from two other inmates that Defendant Reed assaulted them. (Doc. 26:3-19; 35:2-39:8). Mr. Rose, III did not provide evidence of the details of the alleged incidents, nor did he provide admissible evidence that anyone with decision-making authority knew of any federal rights violations by Defendant Reed. For a municipality to be liable under §1983 on the basis of a custom, the practice in question "must be so permanent and well settled as to constitute a custom with the force of law." Doe v. Claiborne Cnty. Tenn., 103 F.3d 495, 507-508 (6th Cir. 1996). Taking the evidence presented by Mr. Rose, III as true, he still falls short of demonstrating a custom with the force of law. There is insufficient evidence to conclude that a municipal policy or custom caused the incident at issue here, and none of the Defendants can be held liable in their official capacities.

### 2. Individual Capacity

Mr. Rose, III has named Sheriff Abdalla as a defendant. To the extent that he sought to sue Sheriff Abdalla in his individual capacity, that claim fails. Mr. Rose, III has not alleged, nor has he provided any evidence to demonstrate, that Sheriff Abdalla took any actions that caused the incident at issue or that he knew about the incident. His sole allegation regarding Sheriff Abdalla is that he failed to act – specifically that he failed to train, discipline, and recruit officers. "A supervisor is not liable pursuant to § 1983 for failing to train unless the supervisor 'either encouraged the specific incident of

9

misconduct or in some other way directly participated in it.  At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"  Phillips v. Roane Cnty., Tenn., 534 F.3d 531, 543 (6th Cir. 2008) (citations omitted).  Absent additional evidence, the failure to train claim is really an official capacity claim, which was discussed above.  Harvey v. Campbell Cnty., Tenn., 453 F. App'x 557, 563 (6th Cir. 2011) ("The attempt to hold [two defendants] liable in their individual capacities for their alleged failure to adequately train employees in Lowe's position 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'") (citations omitted).  There is no evidence supporting a claim against Sheriff Abdalla in his individual capacity.

Mr. Rose, III has also named Officer Spencer and Officer Hassan as defendants and alleged that they harmed him by striking him with their fists and kicking him in his head, neck, and back.  In his testimony, Mr. Rose, III, explained that he did not see either Officer Spencer or Officer Hassan harming him, and did not know whether they did or not.  (Doc. 51-1 at 41:1-20; 73:10-74:9).  He testified that two other inmates claimed to have seen Officers Spencer and Hassan assault him, but he has not presented any sworn testimony from those inmates.  (Doc. 51-1 at 74:10-76:24).  It is well established that a court may not consider inadmissible hearsay when deciding a summary judgment motion.  See, e.g., Alpert v. United States, 481 F.3d 404, 409 (6th Cir. 2007) (citations omitted).  Mr. Rose, III's testimony about what other inmates told him is not admissible, since it is being offered as evidence of what Officers Spencer and Hassan might have done, but it is not in the form of sworn statements from those inmates.  Accordingly, there is no proper evidence before

10

the court supporting claims against Officer Spencer and Officer Hassan in their individual capacities.

Lastly, Mr. Rose, III has named Sergeant Reed as a defendant. He has presented evidence against Sergeant Reed through his sworn testimony and one of his affidavits. Defendants argue that Sergeant Reed should have judgment in his favor because he is protected by qualified immunity.

Public officials sued under 42 U.S.C. § 1983 in their individual capacities may raise "qualified immunity" as a defense to the suit. That defense has been explained as follows: "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Conversely, "if the law was clearly established, the immunity defense should fail, since a reasonably competent public official should know the law governing his conduct." Id. at 818-19. When the defense is raised by motion, "the District Court must decide the purely legal question of whether the law at the time of the alleged action was clearly established in favor of the plaintiff." Dominique v. Telb, 831 F.2d 673 (6th Cir. 1987). The Court's decision on this issue should indicate the law as the Court perceives it and the basis for its conclusion that the constitutional rights at issue were clearly established.

In order for a constitutional right to be clearly established, it is necessary that a decision of the Supreme Court, the highest Court of the state, or a Court of Appeals announce the constitutional principle. See Robinson v. Bibb, 840 F.2d 349 (6th Cir. 1988). A single, idiosyncratic decision from one Court of Appeals is not sufficient to establish clearly a constitutional right. Davis v. Holly, 835 F.2d 1175 (6th Cir.

1987).  "Although official action is not necessarily protected by qualified immunity unless and until the very action in question has been held unlawful ... an official is not bound to anticipate correctly possible future extensions of the law if the question of law was open at the time he acted."  Garvie v. Jackson, 845 F.2d 647, 652 (6th Cir. 1988).

Ordinarily, the Court must undertake a three-step analysis in determining whether qualified immunity applies.  First, the Court should identify the specific constitutional right that the defendant or defendants allegedly violated.  Second, the Court should determine whether, viewing the facts most favorably to the plaintiff, a violation of that right has been established. Finally, the Court should decide whether a reasonable state official would have known, at the time the action occurred and in light of the "clearly established law," that the plaintiff's constitutional rights had been violated.  If so, qualified immunity is unavailable.  See Dickerson v. McClellan, 101 F.3d 1151, 1157 (6th Cir. 1996).

The substantive constitutional right at issue in this case is the Due Process Clause of the Fourteenth Amendment, because Mr. Rose, III was a pretrial detainee at the time of the February 20, 2012 incident.  While Estelle v. Gamble, 429 U.S. 97 (1976) and the Eighth Amendment Cruel and Unusual Punishment clause, by their terms, apply only to persons who have been convicted of a crime and, therefore, are subject to punishment, persons who are incarcerated while awaiting trial cannot be treated less favorably than persons who are in prison following conviction. Consequently, although they are not protected by the Eighth Amendment, pretrial detainees are protected by the Fourteenth Amendment Due Process Clause.  See Bell v. Wolfish, 441 U.S. 520, 535-37 (1979); see also Leary v. Livingston Cnty., 528 F.3d 438, 443 (6th Cir. 2008) (explaining that pretrial detainees bring

excessive-force claims under the Fourteenth Amendment Due Process clause, whereas, "convicted prisoners may bring excessive-force claims under the Eighth Amendment . . . and 'free citizen[s]' may bring such claims under the Fourth Amendment"). "The substantive component of Fourteenth Amendment due process protects citizens against conduct by law enforcement officers that 'shocks the conscience.'" Harris v. City of Circleville, 583 F.3d 356, 365 (6th Cir. 2009) (citations omitted). The Court of Appeals has held that the Due Process Clause protects a pretrial detainee from "excessive force that amounts to punishment." Id. (citations omitted). Under the Due Process Clause, "an excessive-force claimant must show something more than de minimis force." Leary, 528 F.3d at 443 (citations omitted).

Before turning to the evidence here, the Court must consider Defendants' argument that the testimony of Mr. Rose, III should not be credited by the Court because it is contradicted by the record. Specifically, they argue that it contradicts the medical evidence (or lack thereof) in this case. As an initial matter, Defendants have provided no basis for the Court to disregard the testimony of Mr. Rose, III regarding his actions or the conversation between him and Sergeant Reed leading up to the point when, according to the testimony of Mr. Rose, III, Sergeant Reed struck him. Accordingly, at the very least, the evidence that the Court must consider for this motion is that Mr. Rose, III violated a rule by opening a door without approval, that he was yelled at for violating that rule, and that after he turned to walk away, Sergeant Reed made statements that seemed to be an effort to provoke Mr. Rose, III before grabbing him and taking him into the hallway.

Next, the question is whether the medical records so directly contradict the testimony of Mr. Rose, III regarding whether he was struck and kicked so that his sworn testimony

13

should be completely disregarded. The Supreme Court has discussed the way that courts must consider disputed and undisputed evidence at the summary judgment stage:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380 (2007). However, the absence of medical records supporting the testimony of Mr. Rose, III regarding his injuries is not the same as a blatant contradiction by the record. See Coble v. City of White House, Tenn., 634 F.3d 865, 869 (6th Cir. 2011) (reversing the district court and holding that the lack of audible screams or name-calling on an audio recording "cannot be reliably used to discount [the plaintiff's] testimony" that he screamed and called an officer names). Here, as in Coble, a reasonable jury could believe Mr. Rose, III's version of the events, especially in light of his explanations that he made a verbal request to see a doctor, was not given medical slips while in segregation, and that he was afraid to ask for medical forms while in segregation and believed it would be futile. (Doc. 51-1 at 86:21-91:8). The testimony of Mr. Rose, III that he did not have bruises apart from those on his head may arguably indicate that the kicks to his body were not very forceful, but the evidence does not contradict Mr. Rose, III's testimony about blows to his head.

In light of the genuine dispute of facts, the facts must be viewed in the light most favorable to Mr. Rose, III. He testified that Sergeant Reed punched him in the back of the head, then punched his temple, and as he fell down Sergeant Reed kicked

him all over his body.  He testified that as a result, the side of his face and back of his head were swollen for four days, he had headaches for months, and his arm was injured from the kicks.  Mr. Rose, III also testified that he was not trying to escape or fight back.  Given this testimony, the unprovoked punches to his head and side of his face could not be considered a good-faith effort to restore discipline.  Nor are those injuries de minimis.  See Hudson v. McMillian, 503 U.S. 1, 10 (1992) (bruises, swelling, loosened teeth, and a cracked dental plate not de minimis for Eighth Amendment purposes); see also McHenry v. Chadwick, 896 F.2d 184, 187 (6th Cir. 1990) (inmate raising Eighth Amendment claim need not prove that he suffered serious physical injury).  Accordingly, Mr. Rose, III has presented evidence to support a claim against Sergeant Reed for excessive use of force in violation of his Fourteenth Amendment Due Process protections.

 The remaining question for qualified immunity purposes is whether Sergeant Reed should have known that the conduct violated Mr. Rose, III's constitutional rights under the "clearly established" law at that time.  In Harris v. City of Circleville, 583 F.3d 356, 367 (6th Cir. 2009), the Court of Appeals considered the state of the "clearly established" law with respect to Fourteenth Amendment excessive-force claims.  There was an open question as to whether the Fourteenth Amendment's "shocks the conscience" standard or the Fourth Amendment's less stringent "reasonableness" standard was the appropriate standard for the excessive-force claims, and the Court of Appeals held that under either standard, the facts taken in the light most favorable to the plaintiff were sufficient to establish a violation of the plaintiff's rights, and that qualified immunity was not available.  Id. at 365.  In reaching its holding, the Court of Appeals described the clearly established law regarding

15

excessive force under either the Fourth or Fourteenth Amendment:
> Defendants contend that the law was not clearly established because the law was unclear about what standard applies to Harris's excessive force claims (<u>i.e.</u>, the Fourth or Fourteenth Amendment). We reject that argument because even if there were some lingering ambiguity as to whether the Fourth or the Fourteenth Amendment applies in this precise context, the "legal norms" underlying Harris's claims nevertheless were clearly established.
> . . . Under this circuit's existing case law, there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others. <u>See</u> <u>Grawey v. Drury</u>, 567 F.3d 302 (6th Cir. 2009) ("The general consensus among our cases is that officers cannot use force ... on a detainee who has been subdued" and "is not resisting arrest."); <u>see also</u> <u>Bultema v. Benzie County</u>, 146 Fed. Appx. 28, 37 (6th Cir. 2005) (unpublished) ("when a suspect has already been restrained, the officer's constitutional authority to use force is significantly more circumscribed"). As we noted in <u>Bultema</u>, it is clearly established in this circuit that "the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." <u>Id</u>. at *35. Although <u>Bultema</u> is an unpublished opinion, this Court has reached the same conclusion in a number of reported opinions. <u>See, e.g.</u>, <u>Champion v. Outlook Nashville, Inc.</u>, 380 F.3d 893, 905 (6th Cir. 2004) (holding that "no reasonable officer would have continued to spray a chemical agent in the face of a handcuffed and hobbled ... arrestee"); <u>Phelps</u>, 286 F.3d at 302 (holding that no reasonable officer would strike a handcuffed arrestee in the head); <u>Adams v. Metiva</u>, 31 F.3d 375, 387 (6th Cir. 1994) ("A reasonable person would know that spraying mace on an ... incapacitated person ... would violate the right to be free from excessive force"); <u>McDowell</u>, 863 F.2d at 1307 (holding that a "totally gratuitous blow with a policeman's nightstick" to a handcuffed, unresisting suspect was constitutionally unreasonable); <u>Lewis v. Downs</u>, 774 F.2d 711, 714 (6th Cir. 1985) (holding that beating and kicking restrained suspects who are in the control of the police is "plainly excessive" force). Thus, even if it were unclear whether the Fourth or Fourteenth Amendment governs

16

> Harris's excessive force claims, the legal norms
> underlying those claims were nevertheless clearly
> established.

Harris, 583 F.3d at 365-67 (6th Cir. 2009).

A pretrial detainee's right to be free from the use of excessive force amounting to punishment was "clearly established" law at the time of the underlying conduct. See, e.g., Leary v. Livingston Cty., 528 F.3d 438, 443 (quoting Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989)); United States v. Budd, 496 F.3d 517, 530 (6th Cir. 2007) (citations omitted). Based on the evidence presented by Mr. Rose, III, a reasonable jury could conclude that Sergeant Reed was acting maliciously in punching the back of Mr. Rose, III's head and his temple when Mr. Rose, III was compliant and being escorted by at least two jail employees. This is true especially in light of the testimony regarding Sergeant Reed's aggressive comments to Mr. Rose, III preceding the blows. Accordingly, because the evidence could support a finding that Sergeant Reed used excessive force that amounted to punishment, which violated the clearly established Due Process rights of Mr. Rose, III, qualified immunity is unavailable at the summary judgment stage.

## IV. MOTIONS

Mr. Rose, III has filed a motion requesting video argument (Doc. 65) and a motion for denial of oral argument (Doc. 66). In both motions he argues that he has no way to attend a hearing and does not wish to lose the case based on his inability to attend a hearing. Because a hearing is unnecessary in this case and the Court can decide the motion for summary judgment on the papers, there is no need for either an oral hearing or a video hearing.

## VII. RECOMMENDATION

For these reasons, it is recommended that Defendants' Motion for Summary Judgment (Doc. 52) be granted in part and denied in

part. It is recommended that it be granted as to Defendants Sheriff Abdalla, Officer Spencer, and Officer Hassan in their official and individual capacities and as to Sergeant Reed in his official capacity only. It is recommended that it be denied as to Defendant Sergeant Reed in his individual capacity.

It is further recommended that the motions regarding argument (Docs. 65 & 66) be denied.

## VIII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge